Filed 6/2/21  P. v. Jefferson CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>OMAR MALIK JEFFERSON,<br><br>    Defendant and Appellant. | B304681<br><br>(Los Angeles County<br>Super. Ct. No. TA085639) |

APPEAL from an order of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge.  Affirmed.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

_____

Omar Jefferson appeals from an order denying his petition to vacate his murder conviction and to be resentenced under Penal Code section 1170.95.[1]  His appointed counsel filed a brief pursuant to *People v. Serrano* (2012) 211 Cal.App.4th 496 and *People v. Wende* (1979) 25 Cal.3d 436, raising no issues. Jefferson filed a supplemental brief arguing the trial court erred in finding he had not made a prima facie showing of entitlement to relief.  Because the jury in Jefferson's underlying trial was not instructed on felony murder or the natural and probable consequences doctrine, we affirm.

### *FACTUAL AND PROCEDURAL BACKGROUND*

On June 17, 2006, appellant was driving a car with two passengers who were fellow gang members.  Appellant began chasing a rival gang member, Alvin Boyd, who was riding a "minibike."  Occupants in appellant's car fired gunshots at Boyd.

Boyd was able to evade his chasers who then chose another target.  Seven shots were fired from appellant's car at two men standing on the street:  one of the targets was hit in the leg and survived; the other died as a result of a gunshot wound to the chest.

Jefferson and his two accomplices were tried together.  The jury found defendants guilty of one count of willful, deliberate, and premeditated first degree murder, and two counts of attempted murder.  The jury also found true gang and firearm use allegations.  The trial court sentenced Jefferson to 77 years to life.  We affirmed the judgment in an unpublished opinion. (*People v. Jefferson* (Dec. 9, 2009, B208908) [nonpub. opn.].)

---

[1]    All further undesignated statutory references are to the Penal Code.

2

In January 2019, Jefferson, acting in propria persona, petitioned for resentencing of his murder conviction pursuant to newly enacted section 1170.95, arguing that he may have been convicted of murder under the felony murder or natural and probable consequences doctrines.  The trial court appointed counsel, and both parties filed briefs.

The court held a hearing on whether Jefferson had made a prima facie showing that he fell within the provisions of section 1170.95.  The court concluded that Jefferson failed to make a prima facie showing based on this reasoning:  "Petitioner directly and explicitly aided and abetted as he was the driver of a vehicle from which the shots were fired killing the victim. . . .  The jury was also instructed that to convict petitioner they must find that he 'intended to kill[.]' "  The petition was denied, and Jefferson appealed.

### DISCUSSION

When a defendant appeals the denial of postconviction relief and appellate counsel identifies no cognizable issues, the Court of Appeal has "no independent duty to review the record for reasonably arguable issues." (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1039.)  "However, if the defendant files a supplemental brief, the Court of Appeal is required to evaluate any arguments presented in that brief and to issue a written opinion that disposes of the trial court's order on the merits . . . ." (*Id*. at p. 1040.)  Here, Jefferson filed a supplemental brief arguing he was entitled to section 1170.95 relief because the jury may have convicted him under the natural and probable consequences doctrine, pointing to two jury instructions that referenced the natural and/or probable consequences of his

3

actions in the context of implied malice and a firearm enhancement.[2]

Senate Bill No. 1347 enacted section 1170.95, amending "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f), p. 6674.) "As a result, the natural and probable consequences doctrine can no longer be used to support a murder conviction. [Citations.] The change did not, however, alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator.' [Citations.] One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, review granted Mar. 18, 2020, S260598.)

Here, the trial court properly relied on the jury instructions in assessing the prima facie showing under section 1170.95, subdivision (c). (*People v. Edwards* (2020) 48 Cal.App.5th 666, 674 review granted July 8, 2020, S262481.) "The jury instructions given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding

---

[2] Jefferson, in his supplemental brief does not argue the jury was instructed on felony murder, an alternative basis for section 1170.95 relief. (§ 1170.95, subd. (a).)

involving the weighing of evidence or the exercise of discretion.' [Citations.]"  (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 review granted Sept. 23, 2020, S263939.)

The record shows the jury was not instructed on the natural and probable causes doctrine or on any target crime upon which murder based on a natural and probable consequences theory could be predicated.[3]  Instead, Jefferson's argument rests on the following jury instructions given at his trial:  (1) CALCRIM No. 1402 which referenced "the direct, natural, and probable consequence" of a defendant's act in the context of a firearm enhancement, and (2) CALCRIM No. 520 which referred to the "natural consequences" of a defendant's actions within the context of implied malice murder.  However, these jury instructions' references to the natural and/or probable consequences of Jefferson's actions for purposes of malice and a firearm enhancement did not transform his murder *conviction* into one under the natural and probable consequences doctrine.

First, CALCRIM No. 1402 did not address the elements required for murder; it explained the People's burden of proof as to a firearm enhancement under section 12022.53, subdivision (e).

Second, as to CALCRIM No. 520's use of "natural consequences" in the context of implied malice, there is a distinction between implied malice and the natural and probable consequence theory.  As explained by the *Soto* court, "The natural and probable consequence doctrine . . . is a theory of liability by which an aider and abettor who intends to aid a less serious crime can be convicted of a greater crime.  This doctrine comes

---

[3]     We take judicial notice of the jury instructions given in Jefferson's 2008 trial.

5

into play when 'an accomplice assists or encourages a confederate to commit one crime, and the confederate commits another, more serious crime (the nontarget offense).' [Citation.] Applying the natural and probable consequences doctrine, 'a defendant may be held criminally responsible as an accomplice not only for the crime he or she intended to aid and abet (the target crime), but also for any other crime that is the "natural and probable consequence" of the target crime.' [Citation.] Unlike aiding and abetting implied malice murder, which requires the aider and abettor to (at least) share the mental state of the actual perpetrator of implied malice murder, ' "aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense [e.g., murder] because the nontarget offense was not intended at all." ' [Citation.]" (*Soto, supra,* 51 Cal.App.5th at p. 1058.)

Here, because the jury necessarily found Jefferson culpable for murder based on his own actions and mental state as a direct aider and abettor of murder, he "is thus liable for murder under the new law just as he . . . was liable under the old law" (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, review granted Mar. 18, 2020, S260598), and ineligible for relief under section 1170.95.

Jefferson makes two additional arguments: (1) CALCRIM 400 "is no longer a legally valid instruction . . . because the 'equally guilty' was deemed to be [] misleading and could confuse the jury"; and (2) substantial evidence does not support his conviction because "he was not involved in the crime at all and [] only two people were involved and three people were convicted." These arguments are not properly before us. Jefferson has appealed from the trial court's order denying his petition for

6

resentencing under section 1170.95; any argument regarding instructional error or the insufficiency of evidence in support of his underlying conviction may not be raised in a section1170.95 petition, nor is it within the scope of this appeal.

## DISPOSITION

The January 14, 2020 order denying Jefferson's petition for resentencing is affirmed.

RUBIN, P. J.

WE CONCUR:

MOOR, J.

KIM, J.

7